# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TERI S.[1]**, | Case No. 1:19-cv-828-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Katie J. Taylor, HARDER, WELLS, BARON & MANNING, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Katherine Watson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Teri S. brings this action pursuant to § 205(g) of the Social Security Act ("the

Act"), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Act. For the reasons that follow, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

In March 2015, Plaintiff filed applications for DIB and SSI, alleging disability beginning January 1, 1997. AR 284-90, 294-302. The agency denied the claims both initially and upon reconsideration. AR 166-218. Plaintiff appealed and testified at a hearing held before an Administrative Law Judge ("ALJ"). In a decision dated March 29, 2018, the ALJ noted that Plaintiff was previously found disabled beginning June 13, 1997, but in a prior ALJ decision dated January 17, 2013, Plaintiff's period of disability was found to have ended on March 1, 2011. AR 65; *see* AR 125-37. The ALJ therefore considered the remaining period beginning January 18, 2013, the day after the prior ALJ decision issued. On March 29, 2018, the ALJ issued an opinion finding that Plaintiff was not disabled during this period. AR 62-83. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied the appeal in April 2019. AR 282-83, 1-7. Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). AR 1. Plaintiff was born on June 4, 1968, making her 28 years old as of the disability onset date. AR 139. Plaintiff was 44 years old as of January 18, 2013.

### B.  The Sequential Analysis

A claimant is disabled if he or she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis continues. At that point, the ALJ must
    evaluate medical and other relevant evidence to assess and determine the
    claimant's "residual functional capacity" ("RFC"). This is an assessment
    of work-related activities that the claimant may still perform on a regular
    and continuing basis, despite any limitations imposed by his or her
    impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
    416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
    proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC
    assessment? If so, then the claimant is not disabled. 20 C.F.R.
    §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
    his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience,
    is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is
disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also
Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The
Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the
Commissioner must show that the claimant can perform other work that exists in significant
numbers in the national economy, "taking into consideration the claimant's residual functional
capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966
(describing "work which exists in the national economy"). If the Commissioner fails to meet this
burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,
the Commissioner proves that the claimant is able to perform other work existing in significant
numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;
*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff met the insured status
requirements of the Social Security Act and had not engaged in substantial gainful activity since
the relevant period began. AR 68. At step two, the ALJ found that Plaintiff has the following
severe impairments: cervical and lumbar spine degenerative disc disease, obesity, fibromyalgia,
bipolar disorder, and posttraumatic stress disorder ("PTSD"). *Id.* At step three, the ALJ
determined that Plaintiff does not have an impairment that meets or medically equals one of the
listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 69-70.

At step four, the ALJ determined Plaintiff's RFC and found that Plaintiff could perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except she can occasionally climb ramps and stairs, never climb
> ladders, ropes, and scaffolds, and occasionally stoop, kneel,
> crouch, and crawl. Further, the ability to understand, remember,
> and carry out instructions is limited to simple, routine tasks (with a
> reasoning level 2 or less) and using judgment is limited to simple
> work-related decisions. Responding appropriately to supervisors,
> coworker, and the general public can be done occasionally (i.e.
> being exposed more than occasionally exceeds stress tolerance)
> and dealing with changes in the workplace setting is limited to
> simple work-related decisions. Time off-task would be
> accommodated by normal breaks.

AR 70-75. The ALJ found that Plaintiff had no past relevant work. AR 75. Based on these

limitations, the ALJ found at step five that, considering Plaintiff's age, education, work

experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the

national economy, specifically entry level electronics worker; assembler, electrical accessories;

and basket filler. AR 76-77. The ALJ thus concluded that Plaintiff was not disabled. AR 77.

## DISCUSSION

Plaintiff contends that the ALJ erred in four ways. First, she alleges that the ALJ erred in

failing to account adequately for all her mental limitations in the hypothetical posed to the

vocational expert and residual functional capacity finding. Second, Plaintiff contends that the

ALJ improperly rejected the medical opinion of Plaintiff's examining physician. Third, Plaintiff

asserts that the ALJ improperly rejected Plaintiff's subjective symptom testimony. Lastly,

Plaintiff argues that the ALJ erred in rejecting the statements of Plaintiff's lay witnesses.

## A.  RFC Calculation

Plaintiff contends that the ALJ failed adequately to account for all limitations in the RFC,

creating error at step five of the sequential analysis. Specifically, Plaintiff argues that the RFC

excluded the full functional limitations supported by the fully credited testimony of examining

physician Dr. Rebecca Breiholz.

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Dr. Breiholz examined Plaintiff in July 2013. AR 411. Dr. Breiholz reviewed available medical records and administered a clinical interview and mental status examination. AR 411-15. Plaintiff reported a history of being hospitalized several times for suicide attempts and manic episodes. AR 411. She endorsed current frequent depressive episodes and feelings of hopelessness. AR 411-12. Her physical ailments had worsened her depression. AR 412. She did not sleep and would rarely leave her house. *Id*. She reported a history of childhood physical and emotional abuse by her father. *Id*. She had been placed in a group home until age eighteen. *Id*. She reported had difficulty in crowds and with trusting people. *Id*. She endorsed frequent nightmares, intrusive thoughts, and flashbacks of past abuse. *Id*. Plaintiff felt "self-conscious almost to the point of paranoia" when she left her house. *Id*. She did her own grocery shopping but needed her roommate to go with her, and they went late at night to avoid people. *Id*. Plaintiff experienced anxiety in public places and endorsed feelings of anger, irritability, and hypervigilance. AR 412-13. She was terminated from her last job after her boss found her in a

"catatonic state." AR 414. She had trouble completing household chores without assistance from her children. *Id*. She spent her time with her children and watching television. *Id*. Her roommate was her only friend, and she did not spend time with others. *Id*. She did not drive because of fear. *Id*. She spent about a third of the month in bed because of depression. *Id*. Dr. Breiholz observed that Plaintiff cried on and off throughout the evaluation. AR 412, 415. She presented with melancholy mood and congruent, depressed affect. AR 415. Dr. Breiholz diagnosed bipolar I disorder, most recent episode depressed; PTSD; severe multilevel disc disease; osteoporosis; fibromyalgia; and chronic pain. AR 416. She assessed, "Given the chronic nature of these conditions, the claimant is not likely to fully recover within the next 12 months." *Id*. She opined that Plaintiff could understand and remember instructions, perform both simple and repetitive and detailed and complex tasks, and accept instructions from supervisors. AR 416-17. Most significantly, Dr. Breiholz also opined that Plaintiff would difficulty interacting appropriately with coworkers and the public, performing regular work attendance, completing normal workday and workweek, and handling stress effectively in a competitive work environment. AR 417.

The ALJ gave great weight to Dr. Breiholz's opinion. AR 74. The ALJ accounted for Dr. Breiholz's opinion that Plaintiff would have trouble interacting appropriately with coworkers and the public with the restriction to only occasional interactions with others. *Id*. The ALJ acknowledged Dr. Breiholz's view that Plaintiff would have trouble performing regular work attendance, completing a normal workday and workweek, and handling stress effectively in a competitive work environment and purported to account for these impairments by including in the RFC a limitation to simple, routine tasks and simple decision-making. *Id*. Plaintiff contends, however, that these limitations do not accommodate the specific limitation that Dr. Breiholz

articulated—that Plaintiff would have trouble with attendance and completing normal workdays and workweeks.

The ALJ failed to incorporate the attendance limitation into the RFC or explain how the limitations the RFC provided accounted for Dr. Breiholz opinion. Nor did the ALJ give any indication that he rejected or discounted that portion of Dr. Breiholz's opinion. The Commissioner contends that Dr. Breiholz's opinion was too vague on the question of attendance to require that the ALJ incorporate it into the RFC because Dr. Breiholz did not say how often Plaintiff might miss work or what it meant that she would have trouble completing a normal workday or workweek. Although this may be a valid criticism of Dr. Breiholz's report, the ALJ did not give this explanation in his opinion. Rather, the ALJ simply asserted that the RFC accounted for the limitations on regular attendance and completion of the workday and workweek, even though none of the RFC's limitations have any relevance to attendance issues. A court may not affirm the ALJ on a ground on which he did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ does not believe this piece of Dr. Breiholz's opinion, he must say so and explain why. If the ALJ believes that somehow the limitations in the RFC account for Plaintiff's difficulty with attendance, he must clearly articulate how that is so. The error was not harmless because the VE testified that an individual's need to miss consistently more than one day of work per work precludes employment. AR 119.

## B.  Opinion of Dr. Edwin Pearson, Ph.D.

Plaintiff also contends that the ALJ failed to identify a lawful basis for rejecting the opinion of examining psychologist Edwin Pearson, Ph.D. Dr. Pearson opined that Plaintiff could not function in the competitive job market. He stated that Plaintiff would have moderate problems understanding and remembering instructions in any work environment because she was so preoccupied with her physical and mental health problems. He also stated Plaintiff would

have problems with pace, concentration, and persistence even in a routine work setting.

Dr. Pearson said Plaintiff was extremely uneasy in new and unfamiliar social situations and

would have at least moderate, if not severe, problems in any social environment. He indicated

marked severity in activities of daily living, repeated episodes of decompensation, and marked

severity in cognitive and social functioning.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among medical opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between

the opinions of three types of physicians: treating physicians, examining physicians, and non-

examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a

treating physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a reviewing physician's." *Holohan v.*

*Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).[2]

As is the case with the opinion of a treating physician, the ALJ must provide "clear and

convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v.*

*Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is

contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons"

for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a

nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and

---

[2] The standard for discounting the medical source opinion of a treating psychologist is the same as the standard for discounting the medical source opinion of a treating physician because both psychologists and physicians are acceptable medical sources. *See* SSR 06-03p (classifying both doctors and psychologists are acceptable medical sources); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (applying the standard for discounting the opinion of a "treating medical doctor" to assess the opinion of a treating psychologist).

those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179,

184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at

1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while

doing nothing more than ignoring it, asserting without explanation that another medical opinion

is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286

(noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In

other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d

at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-

examining medical advisor cannot by itself constitute substantial evidence that justifies the

rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec.

Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id*. at 600 (opinions of

non-treating or nonexamining physicians may serve as substantial evidence when the opinions

are consistent with independent clinical findings or other evidence in the record).

Because Dr. Pearson was Plaintiff's examining psychologist and his opinion was contradicted by the state medical examiners, the ALJ had to provide specific, legitimate reasons for giving limited weight to Dr. Pearson's opinion. The ALJ found Dr. Pearson's opinion unpersuasive because Plaintiff presented in a normal manner during the examination. AR 74. Dr. Pearson wrote that Plaintiff had a cooperative demeanor and appeared "motorically calm." *Id*. He also indicated that Plaintiff's thought process and content remained intact and her social and communication skills "seemed good in spite of anxiety and depression." *Id*. There was no evidence of hallucinations, delusions, impaired reality testing, or mania. *Id*. On a brief cognitive status exam, Plaintiff obtained a score of 57 out of 58, placing her in the "high" average range. *Id*. Dr. Pearson stated that Plaintiff "clearly" does not have problems with orientation, mental control, visuographic functions, verbal recall, verbal fluency, or response inhibition on testing. *Id*.

The ALJ also wrote that Dr. Pearson's opinion and ratings were inconsistent with other evidence in the record. *Id*. The ALJ pointed to Dr. Breiholz's 2013 consultative mental evaluation, where despite on-and-off tearfulness, Plaintiff maintained good eye contact and cooperative demeanor. *Id*. There was no unusual psychomotor activity, and Plaintiff had a normal rate and volume of speech. *Id*. Plaintiff's thought processes were coherent and goal-directed, and she showed intact memory. *Id*. Plaintiff had good recall and performed well on a basic cognitive test. AR 74-75.

Plaintiff emphasizes other portions of Dr. Pearson's opinion that support a finding of disability. She contends that the ALJ erred by pointing to Dr. Breiholz's 2013 findings because the ALJ failed to discuss the portions of Dr. Breiholz's opinion that were consistent with Dr. Pearson's opinion. AR 74. Most importantly, the ALJ failed to acknowledge that Dr. Breiholz

concluded that Plaintiff would have trouble performing regular work attendance, completing a

normal workday and workweek, and handling stress in a competitive work environment.

AR 417.

The ALJ's selective citations to Dr. Breiholz's report is not a specific and legitimate

reason to discount Dr. Pearson's report. As discussed above, the ALJ fully credited Dr.

Breiholz's opinion, and portions of Dr. Breiholz's opinion *were* consistent with Dr. Pearson's

opinion, including on the essential issue of Plaintiff's capacity to attend and complete work

regularly. The ALJ's reliance on Dr. Breiholz's opinion to discredit Dr. Pearson is inappropriate

without some acknowledgement of the significant ways the two opinions are consistent.

The ALJ found that Dr. Pearson's opinion was internally inconsistent as well. While

Plaintiff faults the ALJ for again selectively picking out the normal findings of Dr. Pearson's

report while ignoring more serious findings, this was not legal error. Plaintiff specifically

contends that she filled out Severity Measure of Depression and the Severity Measure of Panic

Disorder questionnaires that indicated severe depression and panic attacks and faults the ALJ for

not mentioning them in rejecting Dr. Pearson's opinion. However, it is specific and legitimate to

discredit a physician whose treatment notes conflict with his opinion. *Ghanim v. Colvin*, 763

F.3d 1154, 1161 (9th Cir. 2014). That Plaintiff presented in a calm, measured fashion at her

evaluation, despite never having met Dr. Pearson before, is enough of an inconsistency to justify

discounting Dr. Pearson's opinion that Plaintiff would be unable to function in the workplace

due to anxiety and panic. Because the ALJ gave this legally valid reason to discount

Dr. Pearson's opinion, the ALJ is not required to revisit this issue on remand.

**C. Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ erred in discounting her subjective symptom testimony.

At the hearing, Plaintiff testified that she has chronic pain from osteoarthritis. AR 71. She

testified that she has a flare-up every couple of months that confines her to bed for weeks at a

time. She said her hands are constantly numb and she experiences tingling. She claimed

weakness in her legs required her to use a cane to walk. Plaintiff stated that she no longer drives,

that she can only walk a quarter of a block at a time and can only stand for 10 minutes or sit

for 15 minutes. She testified that she can lift between two and five pounds and that she lies down

for most of the day.

Plaintiff also told the ALJ that she suffers from severe anxiety and has trouble leaving the

housing. She said she cannot go to the grocery store or the mailbox. She testified that she hears

voices, feels like she has to look over her shoulder, and has nightmares. Plaintiff stated that she

has routine panic attacks that make her want to stay indoors all day. She claimed to be unable to

focus, as she is preoccupied by violent thoughts.

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step

process for evaluating a claimant's testimony about the severity and limiting effect of the

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not

show that her impairment could reasonably be expected to cause the severity of the symptom she

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found that Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence in the record. As for Plaintiff's physical impairments, the ALJ noted that Plaintiff testified to progressive worsening of her pain, but lumbar spine imagining was unchanged between 2012 and 2016. AR 71. The ALJ also noted that despite Plaintiff's testimony of lower extremity weakness and imbalance, Plaintiff either showed a non-antalgic gait or had a waddling gait. *Id.*

The ALJ also wrote that Plaintiff's treatment history undermined her allegations because there were significant gaps in her treatment history and because her symptoms improved with medication. AR 72-73. The ALJ acknowledged that Plaintiff was uninsured during this period, but noted that Plaintiff did not mention any of these symptoms when she sought emergency care in 2015 for an unrelated pulmonary embolism. AR 72. Plaintiff again sought emergency care in

2016 for back pain, but this came after Plaintiff pulled a 75-pound compressor, which conflicted with Plaintiff's testimony that she could only lift five pounds. *Id.*

Plaintiff objects to the ALJ's reliance on these facts to discount her subjective symptom testimony. First, Plaintiff argues that she understandably did not seek medical care given her lack of insurance and because her anxiety made her fearful of leaving the house. That Plaintiff did not mention back pain during the 2015 hospitalization is understandable, she suggests, because she was seeking treatment for a potentially fatal pulmonary embolism. But Plaintiff says nothing about the 2016 hospitalization, which raises serious doubts about Plaintiff's claimed inability to lift more than five pounds. Although each of the ALJ's reasons for discounting Plaintiff's testimony, standing alone, might be insufficient to justify discounting her subjective symptom testimony, they suffice when viewed together.

**D.  Lay Witness Statements**

Finally, Plaintiff contends that the ALJ inappropriately rejected the written statements of Plaintiff's roommate, James Farris, who reported that Plaintiff needed assistance at home with daily activities, could not drive, had trouble concentrating, and was depressed most of the time. AR 323.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony on a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id*. at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ gave little weight to Mr. Farris' statement because it was inconsistent with other evidence of record. The ALJ specifically pointed to Plaintiff's presentation over much of the longitudinal period that showed no significant imbalance or gait deficits and unremarkable mental status. AR 75. Plaintiff refers to her other arguments about the sufficiency of the record evidence to argue that the ALJ improperly rejected Mr. Farris' testimony. As discussed above, however, the evidence was enough to reject Plaintiff's subjective symptom testimony, and only a germane reason is needed to reject lay witness testimony. The rejection of Mr. Farris' testimony was not in error.

**E. Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

It would be inappropriate to remand for an immediate calculation of benefits in this case. The legal flaw in the ALJ's opinion was the failure to incorporate Dr. Breiholz's attendance limitation into the RFC and the hypothetical presented to the VE, justify his assertion that the

RFC *did* account for the attendance limitation, or explain why he discounted Dr. Breiholz's opinion. There is no testimony subject to the "credit-as-true" rule, as the Court has made no finding on whether the ALJ indeed discounted Dr. Breiholz's opinion and, if so, whether that discounting was supported by legally sufficient reasons.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 24th day of August, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge